Filed 5/14/15  P. v. Blocker CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>KEVIN JOHN BLOCKER,<br><br>     Defendant and Appellant. | A141733<br><br>(Contra Costa County<br>Super. Ct. No. 1214964) |
| In re KEVIN JOHN BLOCKER<br><br>     on Habeas Corpus. | A143540 |

Defendant appeals a judgment entered following his no contest plea to five counts arising out of an incident involving domestic violence. On appeal, he challenges the denial of his *Marsden*[1] motion made during the sentencing hearing. In his petition for habeas corpus, defendant argues that his trial attorney provided ineffective assistance with respect to his plea bargain.[2] We shall affirm the judgment and deny the writ petition.

---

[1] *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*).

[2] We ordered the petition consolidated with the appeal and deferred deciding whether to issue an order to show cause. We hereby grant the request in defendant's petition to take judicial notice of the record in this appeal.

1

## Factual[3] and Procedural Background

From approximately February through April 2012, defendant and the victim lived together with the victim's five-year-old son. When the victim came home on the evening of April 23, 2012, defendant was angry and accused her of being with another man.~ (CT 25, 135)~ He locked the door while yelling, "nobody's leaving this house" and demanded to see her cell phone. He told her he was "going to beat [her] ass" because she would not tell him her cell phone password. Over the next few hours, defendant sexually assaulted her and beat her with a belt demanding the password. He plugged in her curling iron and threatened to stick it inside of her and tried to drown her in the toilet and bathtub, saying that he was going to kill her. When she finally unlocked the cell phone, defendant said, "all you had to do was give me the phone and this would have never happened." The following morning, the victim sent a message to her sister asking her to call the police. When the police arrived later that morning, an officer observed significant bruising on the victim's legs. The victim's son was in the home at the time of the attack and reported to the police that during the assault he felt sad and scared because he thought his mother was going to die and he could not do anything for her.

Defendant was charged by information with 15 counts arising out of the incident. On February 18, 2014, defendant entered a plea of no contest to the following five counts: attempted torture (§ 206/664 – count 15), inflicting corporal injury to cohabitant (§ 273.5, subd. (a) – count 4); false imprisonment by violence (§§ 236, 237, subd. (a) – count 9); child endangerment (§ 273a, subd. (a) – count 13); and assault by force likely to produce great bodily injury (§ 245, subd. (a)(1) – count 14). He also admitted the section 12022, subdivision (b)(1) and section 12022.7, subdivision (e) enhancements alleged under count 4 and admitted four prior prison terms alleged pursuant to section 667.5, subdivision (b). In exchange for his plea he was promised a maximum state prison term of 18years and eight months and dismissal of the remaining counts and allegations.

---

[3] Because defendant pled no contest, we provide only a brief summary of the facts taken from the transcript of the preliminary hearing.

Defense counsel stipulated to a factual basis for the plea, and the court determined that the pleas and admissions were knowingly, intelligently, and voluntarily entered.

On March 14, 2014, the court imposed the upper term of nine years on count 15 (attempted torture), consecutive terms of one year on count four (inflicting corporal injury) plus four months for use of a belt as a deadly weapon and 16 months for great bodily injury amounting to domestic violence; eight months on count nine (false imprisonment); sixteen months on count thirteen (child endangerment); and one year on count fourteen (assault by force likely to cause great bodily injury). The court also imposed an additional one year for each of the four alleged prior convictions under section 667.5, subdivision (b), for a total state prison term of 18 years and eight months.

At the conclusion of the sentencing hearing, the court asked defendant if he was giving up his right to appeal "this conviction and sentence including any ruling on any motions heard prior to this plea." Defendant indicated he was not, and after a bench discussion was held, he explained that he was dissatisfied with his trial counsel. Defendant stated, "I wasn't represented and from what I heard my lawyer say that I would have gotten life if I would have tried to go forward. So what I'm supposed to do? I mean, he never even told me that I could not appeal my case."

Based on defendant's comments, a *Marsden* hearing was held. At the hearing, defendant explained the reasons for his dissatisfaction with his attorney as follows: "I have been here for like two years and two months. From the time that I've been here I never really seen my lawyer. . . . All I get from my lawyer is he comes and he had tell me we got court the next day. That's the only time I really see him is the day before court, you know. And it's like if I'm facing time like this, why haven't any motions or anything been filed on my behalf in my case? I asked for motions to be filed. He told me no. . . . [¶] . . . He's never like – he never even told me that I didn't have a chance to appeal. So I don't even – I didn't even know how that worked because I never even fought a case before. So I just feel that the representation with me and him is just – it's been nothing. There's no contact. I've been here two years. I barely see him. I don't see him at all and when I do see him it's never about the case. It's just about we going to court."

3

The court asked defense counsel to respond and to describe his experiences as a criminal defense attorney. Counsel stated: "That's all I practiced in the last 15 years so I've represented thousands of clients mostly charged with serious and violent felonies court appointed and retained. I've been a certified criminal law specialist since 2007. I'm qualified through the conflicts program to handle the highest level of cases. I've represented probably at least 150 people facing life sentences, probably more. Probably 26 cases—life sentence cases. [¶] . . . [¶] I've represented Mr. Blocker for two years. I probably visited him in the jail at a conservative estimate of 10 times. I understand some of those conversations were not lengthy but more about scheduling type issues. I provided him with every piece of discovery that I've had in this case and [at] his suggestion and his urging to get DNA testing done. It took a while to do that because I'm trying to do it without the DA. I mean, there was – there was – and it came back very favorable and it would have been presented at trial. I was prepared – I understand Mr. Blocker is frustrated that there's no pretrial motions. I did spend a lot of time thinking whether there's a 995 but the standard as the court explained is fairly low. So I was prepared to go to trial. I had a DNA expert. I had medical testimony. I had a number of witnesses. This unfortunately would have had to been a trial case and I was prepared to go to trial but I know that there is a huge downside. I think in my conversation with Mr. Blocker I expressed that. He may disagree with me. I've always tried to be straight forward with him both for bad and the good as to what I thought the evidence was and what would happen and what his exposure was if there may have been some lapses on my part in communicating certain things but I do remember a few times us talking about the 995 type motion and sort of what that means. It means you have to look at the prelim transcript and see if there's any evidence. And I agree that one of the counts that they asked him to plead was done through hearsay but unfortunately you can do hearsay at a preliminary hearing and a 995 would not have been successful. So my intention if Mr. Blocker did not resolve his case was to go to trial and focus on trying to win the life counts. I think even if I had been successful in that and I think there was a lot to say he still would have gotten a prison sentence given his record and given the charges in the

4

teens said at best [*sic*]. I have conveyed all these things to him. I've conveyed all these things to his family who I met with them in my office on two different occasions. I do agree with him that maybe our communication was not optimal. I take any responsibility for that. If there were things that I did not make clear to him, I do recall everything that we've talked about at one time or another mostly the things that he has expressed and he did give me some helpful information which I intend to use in trial to impeach the witness. I did not think it was in his interest to disclose that impeachment evidence to the District Attorney's Office because that actually would have would allow[ed] them to prepare and make it less effective but if it would have had to been produced at trial it would have made a difference and possibly undermine the credibility of the witness—the complaining witness in this case. So he did provide me with helpful stuff which I was intending to utilize in this case. I probably in hindsight if he felt that we didn't have time talking about his case that's something I regret because I don't want anybody especially facing serious charges to feel that way. Mr. Blocker never contacted me by phone or by letter telling me that he needed to talk about – and, you know, you get busy with things and you feel – and also Mr. Blocker is an adult with some experience in the criminal justice system but there are other clients that I think really don't get what's going on. I did not feel that Mr. Blocker was one of those clients who had that. I would have been glad I talked to him had he contacted me anytime about anything that he wanted to do but, yes, there were some visits where I, you know, just been brought in the day in court and had to be in trial and just saying what would happen so I completely agree that he may have interpreted it that way."

The court denied the *Marsden* motion, explaining "I haven't heard anything that would lead me to believe that Mr. Feuerwerker isn't doing the best that he can. . . . [¶] And now the next question, sir, is do you want to go forward with the sentencing or do you want to — I mean, withdraw your plea and go to trial? I mean, what do you want to do?" Defendant responded, "But how am I going to sentence with somebody I don't trust, I mean, go to trial? You're making me go to trial with someone that just said he told you on record that he hasn't been representing me like that and you're denying me. This

5

is my life. This is not 9 months." He questioned, "I want to know what do I got to do if I proceed to move on? How can I get me a new attorney?" The court explained that if defendant wanted to withdraw his plea and go to trial, he could but that the court would not be appointing a new attorney. The court reiterated, "if you don't trust him I think both of you – both of you need to work on communicating better. Mr. Feuerwerker has said here that he's ready to go to trial if that's what you want to do. So if you want to withdraw the plea, let me know." Defendant indicated that he would like to continue under the plea but wanted the right to appeal. The court agreed and advised defendant that he would not be asked to waive "any appellate issues."

Defendant timely filed a notice of appeal and the trial court denied his request for a certificate of probable cause. Thereafter, defendant filed a petition of writ of habeas corpus, which was consolidated with the present appeal.

## Discussion

### 1. *Marsden* Motion

The law regarding this court's review of a denial of a *Marsden* motion is well settled. "When a defendant seeks substitution of appointed counsel pursuant to *People v. Marsden*, *supra*, 2 Cal.3d 118, 'the trial court must permit the defendant to explain the basis of his contention and to relate specific instances of inadequate performance. The defendant is entitled to relief if the record clearly shows that the appointed counsel is not providing adequate representation or that defendant and counsel have become embroiled in such an irreconcilable conflict that ineffective representation is likely to result.' [Citations.] [¶] We review the denial of a *Marsden* motion for abuse of discretion. [Citation.] Denial is not an abuse of discretion 'unless the defendant has shown that a failure to replace counsel would substantially impair the defendant's right to assistance of counsel.' [Citation.] [¶] . . . [¶] . . . The mere ' "lack of trust in, or inability to get along with," ' counsel is not sufficient grounds for substitution." (*People v. Taylor* (2010) 48 Cal.4th 574, 599-600.)

We agree with the trial court that there was no basis for granting the motion in this case. Contrary to defendant's argument, the trial judge properly inquired into the nature

6

of the disagreement, not only into counsel's ability to provide adequate assistance. While the record reflects defendant's considerable frustration, much of that frustration stemmed from his belief that he was unfairly overcharged in this case. The record, quoted extensively above, does not reflect an irreconcilable conflict between defendant and his attorney.

## 2.     Ineffective Assistance of Counsel

"To establish a claim of inadequate assistance [under the Sixth and Fourteenth Amendments to the United States Constitution], a defendant must show counsel's representation was 'deficient' in that it 'fell below an objective standard of reasonableness . . . under prevailing professional norms.' [Citations.] In addition, a defendant is required to show he or she was prejudiced by counsel's deficient representation. [Citation.] In determining prejudice, we inquire whether there is a reasonable probability that, but for counsel's deficiencies, the result would have been more favorable to the defendant." (*People v. Frye* (1998) 18 Cal.4th 894, 979, quoting, *Strickland v. Washington* (1984) 466 U.S. 668, 687-688, overruled on another point in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22.) To successfully challenge a guilty plea on the ground of ineffective assistance of counsel, as defendant attempts to do in this case, "a defendant must establish not only incompetent performance by counsel, but also a reasonable probability that, but for counsel's incompetence, the defendant would not have pleaded guilty and would have insisted on proceeding to trial." (*In re Alvarez* (1992) 2 Cal.4th 924, 934.)

In his petition for writ of habeas corpus, defendant argues that his defense counsel provided inadequate assistance when he (1) improperly coerced a plea bargain; (2) improperly advised defendant to admit to two of the four prior prison terms under section 667.5, which he contends he did not in fact serve; and (3) failed to object to the trial court's erroneous pledge that if defendant proceeded with sentencing under the plea bargain, he would not be waiving "any appellate issues."

a. <u>Counsel did not coerce defendant to enter the plea bargain</u>

Defendant argues that counsel coerced him into taking the plea bargain by telling him "that he had to agree to the terms of the plea bargain or he would get life in prison." Counsel's implicit recommendation that defendant accept the plea bargain rather than risk life in prison is clearly not a threat. It was also not unreasonable advice given the evidence against defendant and the maximum exposure under the charges in the complaint. In the course of the *Marsden* hearing, both the court and counsel explained that his maximum exposure was significant and the likelihood that he would face lengthy prison time if he went to trial was real. In response to defendant's protestation that he did not commit the sexual assault offenses charged, the court explained, "Mr. Feuerwerker is not responsible or he has . . . nothing to say about how the District Attorney chooses to file the case. And the way they chose to file the case you have a few different counts where if you got convicted of just those counts you could get life in prison, an indeterminate life sentence. It may be true that you can beat one or two or a few of these counts at trial. But unless you were convinced that you could beat everything, then you have looming over you when you go to trial the very real possibility that you could fall on just one of these counts and get an indeterminate life sentence . . . So it's much better in the general scheme of things to get a determinate number of years when you know – it may be a lot of years – but you know that you are definitely getting out of prison at some point as opposed to going to trial, risking getting convicted of a crime that carries a life sentence where you don't get a release date."

Defendant also claims that he did not know that he was facing a sentence of more than 18 years under the plea and that counsel told him "that he could get a better deal" at sentencing. The plea waiver form signed by defendant expressly states, however, "I understand that my sentence in state prison . . . will be 18 years and 8 months." The plea form further advises defendant that he was facing a prison term of 120 years and 8 months under the charges in the information.   At the hearing, the judge confirmed that no one had threatened defendant or promised him anything other than the terms of the plea agreement. Finally, at the *Marsden* hearing held after defendant was sentenced, defendant

was given the opportunity to withdraw his plea but chose not to do so. Had he really been caught off guard regarding the terms of his plea, he had the opportunity at that point to withdraw the plea. Accordingly, we find no merit in defendant's claim that his plea was coerced.

        b. <u>Counsel did not provide prejudicially deficient advice regarding the prior prison term enhancements.</u>

The record establishes that defendant signed a comprehensive rights waiver, which contained all of the appropriate language, and which expressly included the four prior prison term enhancements. At the plea change hearing, the trial court confirmed that defense counsel had discussed the waiver form with petitioner, and petitioner acknowledged that he had read and understood the form. Defendant admitted each prior prison term allegation individually, by date, at the time his plea was taken. The record provides no basis to doubt that defendant understood that he was admitting to having served four prior prison terms.

Although defendant states in his petition that the "evidence in this case consists of documents which, without dispute, demonstrate that petitioner had not on four separate occasions been sentenced to and completed prison terms," the record does not establish conclusively that defendant did not serve four prison terms. Rather, the record establishes that he did serve at least two prior prison terms. Defendant does not make a sworn statement in his declaration that he only served two prior prison terms or explain why he agreed to admit two additional terms he had not previously served.

More importantly, even if we assume that counsel was in some way deficient in failing to identify the lack of evidence in the record to support two of the prior prison terms, defendant has not alleged that he would have rejected the offered plea bargain had he been advised of this alleged lack of evidence. While defendant makes a general allegation that he would like to withdraw his plea, he does not claim that he would not have entered the plea had he known there was a basis to challenge the additional two years imposed by the enhancements.

9

c. Counsel did not provide prejudicially deficient advice regarding defendant's appellate rights.

Defendant contends counsel rendered ineffective assistance when he failed to object to the court's allegedly unauthorized promise that "We're not going to be asking you to waive any appellate issues." Defendant argues that the court did not have jurisdiction to waive the statutory requirement of a certificate of probable cause and, in fact, the court later denied that request. We do not, however, understand the court's comments as a promise to waive the certificate of probable cause requirement. To the contrary, the court was indicating that defendant would not be waiving his right to seek a certificate of probable cause. There was no guarantee that his request would be granted.

Both the court and counsel provided an explanation of a defendant's appellate rights following entry of a plea. At the *Marsden* hearing the court stated, "I realize that you were thrown for a loop when this issue of the appellate waiver came up and . . . I'm just going to explain a little bit about that. So . . . when people plead out as opposed to going to trial, generally speaking you don't have a right to appeal because you take a plea bargain. . . . You go through a process where you petition the court that took your plea for what we call a certificate of probable cause and the judge would have to decide whether there's any possible merit to any appealable issue and only if the judge agreed and signed that certificate of probable cause could you even file anything. So you don't have a right to appeal when you take a plea bargain anyway. But the District Attorney's office in this county has a general policy in every case . . . where this person is pleading out, of taking an appellate waiver on the record. In a lot of respects it's kind of meaningless because you don't have a right to appeal when you plead, but that's the DA's policy here with every case." Later, defense counsel added, "with the whole waiving your right to appeal, . . . in no way is Mr. Blocker waiving his right to file any kind of collateral attack based on, for example, ineffective assistance of counsel which he has an absolute right to do. You cannot waive that so I'm just pointing that out. He has an absolute right to do that or any other issue that might properly be separate from the statutory right to appeal." Defendant was not asked to waive his right to seek a certificate of probable cause.

Moreover, we note briefly that any confusion defendant may have had in this regard was harmless. Defendant's notice of appeal sought a certificate of probable cause as to issues involving the court's ruling on the *Marsden* motion and the adequacy of his representation in the trial court. Neither issue required a certificate of probable cause and both of which have been considered by this court.

## Disposition

The judgment is affirmed. The petition for a writ of habeas corpus is summarily denied. (See *People v. Romero* (1994) 8 Cal.4th 728, 737.)


_____
Pollak, Acting P.J.


We concur:


_____
Siggins, J.


_____
Jenkins, J.